UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) No. 4:19-CR-00116 CDP |
| KENNETH A. GROOMS II, | ) ) ) |
| Defendant. | ) ) |

GOVERNMENT'S TRIAL BRIEF WITH MOTIONS IN LIMINE

COMES NOW the United States of America, by Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Reginald L. Harris and Jennifer A. Winfield, Assistant United States Attorneys for said District, and submits the following trial brief and motions in limine in connection with the trial of the above-styled matter.

INTRODUCTION & BACKGROUND

This brief is intended as a general guide for the Court. It is not intended as a comprehensive statement of the Government's case, nor is it intended to be in the nature of a bill of particulars that would fix, bind, or in any way limit the Government to a set theory of proof.

I.   SUMMARY OF PROCEEDINGS TO DATE

On February 13, 2019, the United States Attorney for the Eastern District of Missouri filed an Information charging Kenneth A. Grooms II ("Grooms") with one count of Deprivation of Rights Under Color of Law in violation of Title 18, United States Code, Section 242. The defendant was arraigned on the information on February 27, 2019. The defendant has filed no pre-trial motions attacking the charge or seeking to suppress any evidence. The case is

scheduled for trial on Monday, July 8, 2019.

II.     FACTUAL BACKGROUND

To aid the Court in understanding this matter, in the paragraphs that follow, the Government attempts to summarize some, but not all, of the evidence it expects to present at trial.

Defendant Grooms is charged with depriving victim "John Doe" of his right to be free from unreasonable seizure by a law enforcement officer in connection with the defendant's encounter with "John Doe" in St. Louis, Missouri on May 5, 2018.  At the time of the incident, Grooms was a Police Officer with the St. Louis Metropolitan Police Department ("SLMPD").

On May 5, 2018, the victim pulled his vehicle onto the parking lot of a local Chinese restaurant near the intersection of West Florissant Avenue and Goodfellow Boulevard in St. Louis City.  As the victim was pulling onto the parking lot, his truck passed closely by a car being driven by Grooms's girlfriend ("KW"), who appeared to be in the process of exiting the parking lot.  Feeling that the victim had gotten too close to her car, KW began yelling at the victim from her car.  The victim pulled his truck into a parking space, away from KW's car, which was still resting at the parking lot exit.  He then exited his truck, exchanged words with KW, and entered the restaurant.

Grooms, who claimed to have overheard the victim and KW arguing, responded to the restaurant a few minutes later in a police SUV.  Dressed in his police uniform, and armed with a gun, Grooms entered the restaurant and directed the victim to step outside the restaurant.  The victim, who was not armed, complied, whereupon Grooms placed him in handcuffs and placed him in the backseat of his police SUV.  Grooms then drove off with the victim handcuffed in the

2

backseat.

Grooms drove the victim to a nearby alley. Along the way, Grooms drove in a manner that caused the handcuffed victim to be tossed around inside the SUV, including accelerating over a speed bump, and accelerating and suddenly slamming on the brakes during turns. Grooms parked in the alley and pulled the victim out of the patrol vehicle. He then pushed the victim against a fence and a trash dumpster, told the victim that no one cared what happened to him, and continued to berate the victim for his interaction with KW. While yelling at the victim, Grooms had his hand on his gun. The victim pleaded with Grooms to let him go.

After a few minutes in the alley, Grooms placed the victim back into the police vehicle and drove him back to the restaurant parking lot. He let the victim out of the vehicle, un-cuffed the victim, and drove away.

When interviewed about the encounter, Grooms told an FBI agent that he told the victim, "hey this is my family, this is personal to me …." Grooms did not prepare a police report of the arrest of the victim. He also did not put out a call over the police radio either before, during, or after the encounter with the victim. Grooms did not notify a supervisor prior to his departure from the precinct. Instead, he responded to the restaurant alone and never requested assistance from a fellow officer.

## LEGAL MATTERS

In the following sections, the Government summarizes certain legal matters that may arise prior to or during the trial of this case. The Government addresses these matters now, in order to assist the Court and to identify possible issues to defense counsel prior to trial so that counsel may respond and the Court may rule. The Government does not, however, attempt to

address every legal matter that may arise.

I.    ELEMENTS OF THE OFFENSE

The defendant is charged with violating 18 U.S.C. § 242, which subjects to criminal punishment anyone who, "under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . ." 18 U.S.C. § 242. To prove a violation of section 242, the Government must establish that the defendant (1) willfully and (2) under color of law (3) subjected another person to the deprivation of any right secured or protected by the Constitution or federal law. Id.; United States v. Lanier, 520 U.S. 259, 264 (1997); United States v. Fleming, 526 F.2d 191, 192 (8th Cir. 1975).

*A. Willfulness*

A "willful" act is one committed either "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." Screws v. United States, 325 U.S. 91, 105 (1945); see also U.S. v. Reese, 2 F.3d 870, 881 (9th Cir. 1993) (intentionally wrongful conduct that "contravenes a right definitely established in law, evidences a reckless disregard for that right[, which], in turn, is the legal equivalent of willfulness."); see also United States v. Johnstone, 107 F.3d 200, 208 (3d Cir 1997) ("[W]illfulness includes reckless disregard."). Although the Government must establish that the defendant acted with the specific intent to deprive a person of a federal right, it need not prove that the defendant was thinking in constitutional terms. Screws, 325 U.S. at 106 ("The fact that the defendants may not have been thinking in constitutional terms is not material where their aim was not to enforce local law but

4

to deprive a citizen of a right and that right was protected by the Constitution."). Rather, the willfulness element of 18 U.S.C. § 242 simply requires that the defendant know that his actions are wrong and against the law but that he choose to act anyway.

    *B. Color of Law*

Under § 242, a defendant acts under color of law when he is an official or employee of a federal, state, or local government and uses or abuses the power he possesses by virtue of law—even if his actions violate state law or exceed his lawful authority. West v. Atkins, 487 U.S. 42, 49 (1988); Griffin v. Maryland, 378 U.S. 130, 135 (1964); Williams v. United States, 341 U.S. 97, 99-100 (1951); United States v. Classic, 313 U.S. 299, 326 (1941). Put another way, an officer acts under color of law when he acts "under pretense of law." Screws, 325 U.S. at 111.

    *C. Deprivation of a Protected Right*

The Fourth Amendment of the United States Constitution protects arrestees like "John Doe" from unreasonable seizure by a law enforcement officer. United States v. Rodella, 804 F.3d 1317, 1323-24 (10th Cir. 2015). To prove a violation of the right to be free from unreasonable seizure requires proof that (1) a seizure occurred and (2) the seizure was unreasonable. United States v. House, 684 F.3d 1173, 1198 (11th Cir. 2012). A seizure occurs under the Fourth Amendment when a law enforcement officer terminates a person's "freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597 (1989). An arrest is the quintessential example of a seizure of the person. California v. Hodari D., 499 U.S. 621, 624 (1991). A temporary detention of a person by a police officer, even if only for a brief period and for a limited purpose, also constitutes a seizure under the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996).

5

Whether viewed as an arrest or an investigative stop, the Government intends to prove that Defendant Grooms' seizure of the victim in this case was unreasonable.  For an arrest to be reasonable under the Fourth Amendment, it must be supported by probable cause.  Probable cause requires that "the facts and circumstances within [an officer's] knowledge and of which [the officer] has reasonably trustworthy information [be] sufficient to warrant a prudent man in believing" that the person seized is guilty of a crime.  Beck v. Ohio, 379 U.S. 89, 91 (1964).

A police officer may conduct a brief, investigatory stop when he has "a reasonable, articulable suspicion that criminal activity is afoot."  Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Reasonable suspicion requires "some minimal level of objective justification," meaning "something more than an inchoate and unparticularized suspicion or hunch," that the person seized is guilty of a crime.  United States v. Sokolow, 490 U.S. 1, 7 (1989).  An investigatory stop that is initially supported by reasonable suspicion may nevertheless violate the Fourth Amendment "if it is excessively intrusive in its scope or manner of execution."  United States v. Johnson, 592 F.3d 442, 451 (3rd Cir. 2010).  When police hold a detained suspect beyond the time necessary to effectuate the purpose of the stop, the seizure becomes an arrest and must be supported by probable cause.  United States v. Brignoni-Ponce, 422 U.S. 873, 880-82 (1975); Florida v. Royer, 460 U.S. 491, 502-03 (1983) (stop converted to arrest because officers moved detainee from concourse to small room during airport stop).

When conducting an investigative stop, an officer may use some degree of force, including handcuffing a person.  Graham v. Connor, 490 U.S. 386, 396-97 (1989).  "However, the use of handcuffs is greater than a de minimus intrusion and thus requires the officer to demonstrate that the facts available to the officer would warrant a man of reasonable caution in

6

the belief that the action taken was appropriate." El-Ghazzawy v. Berthiaume, 636 F.3d 452, 457 (8th Cir. 2011) (quoting Lundstrom v. Romero, 616 F.3d 1108, 1122 (10th Cir. 2010)).  Thus, for the use of handcuffs during an investigative stop to be appropriate under the Fourth Amendment, the officer must reasonably believe that the detained person is armed and dangerous or that handcuffs are necessary for some other legitimate purpose.  El-Ghazzawy, 636 F.3d at 457 (quoting Bennett v. City of Eastpointe, 410 F.3d 810, 836 (6th Cir. 2005)).

II.  RECORDINGS & TRANSCRIPTS

The Government may introduce at trial a recording of an interview of the defendant by a Special Agent ("SA") with the Federal Bureau of Investigation.

*A.  Excerpt Recordings*

The audibility of the recording is generally good, but it is lengthy.  Therefore, the Government does not intend to play the entire recording.  Instead, excerpts of the recording will be offered; such excerpts and summary testimony about the same are appropriate.  See Fed. R. Evid. 1006; United States v. Segines, 17 F.3d 847 (6th Cir. 1994); United States v. Denton, 556 F.2d 811, 815-16 (6th Cir. 1977) and cases cited therein.

*B.  Authenticity of Recordings*

Based on discussions with defense counsel, it is anticipated that the authenticity of the recordings will be stipulated by the parties.  If not, the Government will authenticate the recordings through the testimony of the SA who conducted the interview.  The case of United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975) and its progeny set forth a prima facie test to establish the authenticity of electronic surveillance.  See United States v. Henley, 766 F.3d 893, 912-13 (8th Cir. 2014) (analyzing McMillan factors).  The

elements of this test are not rigid, but are applied with flexibility and common sense.  Id.; United States v. Webster, 84 F.3d 1056, 1064 (8th Cir. 1996); United States v. Roach, 28 F.3d 729, 733 (8th Cir. 1994).

    C.    *Use of Transcripts*

The Government plans to introduce transcripts of all of the excerpts played.  In the Eighth Circuit, the decision to allow the use of transcripts to assist jurors in listening to a recording lies within the sound discretion of the district judge.  United States v. Chavez-Alvarez, 594 F.3d 1062, 1069 (8th Cir. 2010); see also United States v. Placensia, 352 F.3d 1157, 1165 (8th Cir. 2003) (noting trial court's discretion to admit transcripts of foreign language transcripts even without tape recordings).  Transcripts in the jury room will generally not be considered cumulative when they assist the jury in evaluating the evidence.  Chavez-Alvarez, 594 F.3d at 1069.

The use of transcripts aids the jury in a number of ways.  Among these are: (1) to help the jurors follow often poor-quality recordings -- United States v. Riascos, 944 F.2d 442, 443 (8th Cir. 1991); (2) to identify speakers -- United States v. Henneberry, 719 F.2d 941, 949 (8th Cir. 1983), cert. denied sub nom. Youngerman v. United States, 465 U.S. 1107 (1984); (3) to assist the jury when portions of the recording are inaudible -- United States v. Willis, 774 F.2d 258, 259 (8th Cir. 1985); and (4) to aid the jury in understanding colloquialisms in the conversation -- United States v. Delpit, 94 F.3d 1134, 1148 (8th Cir. 1996).

The trial court should allow the use of transcripts only after each party has had an opportunity to verify the accuracy of the recordings and provide their own transcript.  United States v. Britton, 68 F.3d 262, 264 (8th Cir. 1995).  Foundationally, the person who prepared the

transcripts should testify that he has listened to the recordings and accurately transcribed their contents.  United States v. Bentley, 706 F.2d 1498, 1507 (8th Cir. 1983); United States v. Frazier, 280 F.3d 835, 849 (8th Cir. 2002).  However, the Eighth Circuit does not mandate that the foundation for the transcripts be laid by one who prepared the transcripts, but it may be established by one who was a party to the conversations.  United States v. Gordon, 688 F.2d 42, 44 (8th Cir. 1982); Frazier, 280 F.3d at 849-50.

The Court, of course, must instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that "any discrepancies [from the transcript] should be resolved in favor of what they heard on the tapes." United States v. Scott, 243 F.3d 1103, 1107 (8th Cir. 2001).  However, once admitted into evidence and given the proper cautionary instruction, the transcripts may be used by the jury in their deliberations.  United States v. Foster, 815 F.2d 1200, 1203 (8th Cir. 1987); Chavez-Alvarez, 594 F.3d at 1069.

## MOTIONS IN LIMINE

I.   EVIDENCE OF DEFENDANT'S GOOD CONDUCT

The United States moves this Court to exclude from trial evidence of, or reference to, any specific instances of the defendant's good conduct, including but not limited to, evidence of any awards, commendations, or recognition he may have received during his career in law enforcement.  Such evidence would constitute improper character evidence under Federal Rules of Evidence 404(a)(1) and 405(a) and therefore should be excluded.

Evidence of specific instances of good conduct by the defendant, or of awards, commendations, or other recognition he received, is inadmissible under Federal Rule of

Evidence 404(a)(1), because the evidence does not relate to a character trait that is "pertinent," or relevant to, the criminal charges in this case.  Second, even if the evidence related to a pertinent trait, evidence of the defendant's specific acts of good conduct would still be inadmissible under Rule 405(a), which governs the form of character evidence, and allows evidence only as to the reputation of the defendant or as to a witness's opinion of the defendant's pertinent character trait.  The Rule prohibits the introduction of evidence relating to specific instances of conduct reflecting the character trait.

      A.    *Evidence of Specific Instances of Good Conduct by the Defendant Constitutes Inadmissible Character Evidence.*

Rule 404(a) of the Federal Rules of Evidence generally prohibits the introduction of evidence of a person's character to prove that the person acted in conformity therewith on a particular occasion.  The Rule's general prohibition against character evidence contains three exceptions, one of which governs the admissibility of character evidence relating to the accused.[1]  See Fed.R.Evid. 404(a)(1).  The exception concerning the character of the accused specifies that such evidence is admissible only if it relates to a "pertinent," or relevant, character trait.  See Fed.R.Evid. 404(a)(1).  In United States v. Neighbors, 23 F.3d 306, 310 (10th Cir. 1994), the Tenth Circuit held that the trial court properly excluded a defendant's good character evidence because evidence that the defendant was asked to serve on the board of a substance abuse center because of his strong advocacy against drug abuse was not material to whether the defendant, a pharmacist, had violated federal drug statutes by over-ordering several kinds of drugs on behalf of the pharmacy where he worked and converting them to his own use.  See also United States v.

---

[1] Rule 404(a)(2) contains an exception for character evidence concerning the victim; Rule 404(a)(3) contains an exception for character evidence concerning a witness.

10

Washington, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (holding that a police officer's commendations were not admissible because the defendant's "dedication, aggressiveness and assertiveness" in investigating drug dealing and carjacking was neither "pertinent" to, nor an "essential element" of, bribery, conspiracy, or drug and firearms charges with which he was charged); United States v. Nazzaro, 889 F.2d 1158, 1168 (1st Cir. 1990) (holding that the trial court properly excluded evidence of a police officer's prior commendations because "the traits which they purport to show—bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the crimes [of perjury and conspiracy to commit mail fraud] of which [the defendant] stood accused").

In this case, character evidence offered to prove the general good character of the defendant—such as effectiveness, attention to duty, commitment to public service, kindness, professionalism, or dedication—is not admissible because it is not pertinent to the civil rights charge brought against the defendant. Although a defendant's character for law-abidingness is always "pertinent," United States v. Yarborough, 527 F.3d 1092, 1102 (10th Cir. 2008), evidence of the defendant's successful performance of his duties as a law enforcement officer or evidence of specific acts of helpfulness to the community does not constitute evidence of his law-abiding character. Thus, evidence of the defendant's specific good acts, commendations, and awards is irrelevant and should be excluded as impermissible character evidence.

  B. *Any Admissible Character Evidence Must be Limited in Form to Testimony as to the Witness's Opinion of the Defendant or the Defendant's Reputation.*

Even if evidence of the defendant's prior good acts were indicative of a pertinent character trait or of general law-abidingness, the form of that evidence would be governed by

11

Federal Rule of Evidence 405(a), which limits such evidence to "testimony as to reputation or by testimony in the form of an opinion." Fed.R.Evid. 405(a).  Proof of specific instances of conduct is not permitted under the Rule.  See United States v. John, 309 F.3d 298, 303 (5th Cir. 2002); United States v. Marrero, 904 F.2d 251, 260 (5th Cir. 1990) (finding that trial court properly excluded defendant's proffer of specific instances of good character).[2]  See also United States v. Ellisor, 522 F.3d 1255, 1270-71 (11th Cir. 2008); United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978) (finding that trial court should not have permitted defense witness to establish defendant's good character by referring to specific good acts).

Thus, even if the defendant established a basis for the relevance of evidence of good character, the defendant would still be limited to proving such good character in the form of testimony as to the defendant's reputation or an opinion about the defendant's relevant character trait.  For example, a witness could testify that he is familiar with the defendant's reputation and that the defendant has a reputation for being a law-abiding citizen.  The defendant would not be permitted, however, to introduce evidence of, or refer to, any specific instances of good conduct engaged in by the defendant, or to introduce evidence of, or refer to, his good work performance or achievements in general.  Even in the limited circumstances in which character evidence concerning the defendant is admissible, circumstantial evidence that the defendant acted in conformity with a relevant character trait may not be proved by specific instances of good

---

[2] Rule 405(b) permits specific instances of conduct to prove character only in cases in which the character trait at issue is "an essential element of a charge, claim, or defense." For example, in a defamation or libel case, damage to the reputation of the complainant is an essential element of the charge.  See Schafer v. Time, Inc., 142 F.3d 1361, 1371-72 (11th Cir. 1998).  In this case, the defendant's character is not an essential element of any charge or defense.

conduct.³

II.     JURY NULLIFICATION

The Government similarly requests that the Court preclude any attempts by the defense to encourage jury nullification. Although a jury has the power to engage in jury nullification, "this power of the jury is not a right of the defendants," and "it is not to be positively sanctioned by instructions [or arguments] . . . which would encourage a jury to acquit . . . regardless of the applicable law or proven facts." United States v. Sloan, 704 F. Supp. 880, 884 (N.D. Ind. 1989) (granting the government's motion *in limine* regarding jury nullification arguments) (citation and internal quotation marks omitted). Thus, just as courts should not instruct the jury that they may acquit a defendant even if he or she is guilty, United States v. Drefke, 707 F.2d 978, 982 (8th Cir. 1983); United States v. Avery, 717 F.2d 1020, 1027 (6th Cir. 1983), courts may prohibit the defense from arguing that the jury may engage in nullification. United States v. Brown, 548 F.2d 204, 210 (7th Cir. 1977); see also United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[A] trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."). This Court should do likewise and preclude the defendant from eliciting testimony or presenting arguments that encourage jury nullification.

---

³ If the defendant's witnesses are permitted to offer character evidence in the form of reputation and opinion testimony regarding the good character of the defendant, the government is permitted under Rule 405(a) to inquire of the witnesses on cross-examination about their knowledge of specific acts of misconduct by the defendant. See United States v. McHorse, 179 F.2d 889, 901-02 (10th Cir. 1999).

13

III.     REFERENCES TO PENALTIES FACED BY DEFENDANT

The Government moves this Court to exclude any evidence or argument related to the potential penalties faced by the defendant if convicted.

The Eighth Circuit unequivocally has held that "[t]he penalty to be imposed upon a convicted defendant is generally not a matter for the jury." United States v. Briscoe, 574 F.2d 406, 408 (8th Cir.), cert. denied 439 U.S. 858 (1978).  The role of the jury is to decide guilt or innocence, not to determine punishment.  See Shannon v. United States, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting United States v. Rogers, 422 U.S. 35, 40 (1975)); United States v. Goodface, 835 F.2d 1233, 1237 (8th Cir. 1987) ("the jury's duty is to determine the guilt or innocence of the accused solely based on the evidence adduced at trial").  Thus, "sentencing procedures or details regarding a defendant's possible punishment are irrelevant to the issues that a federal jury must decide.  To inform a federal jury about a defendant's punishment would only introduce improper and confusing considerations before it."  United States v. Thomas, 895 F.2d 1198, 1200 (8th Cir. 1990).  Mention of the potential penalties faced by the defendant would serve only the improper purpose of jury nullification.  See, e.g., United States v. Reagan, 694 F.2d 1075, 1080 (7th Cir. 1982) ("'The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.'") (quoting United States v. Greer, 620 F.2d 1383, 1384 (10th Cir. 1980)); United States v. Patterson, 1996 WL 54237, at *1 (N.D. Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification).

14

Proscribed mention of penalties should include not only specific references to years in jail, but also more veiled themes in potential defense arguments, such as arguments to the effect that the defendant is "on trial for his life," that the defendant's "freedom" hangs on the outcome of the jury's decision, and that the defendant should not be separated from his family.  Each of these arguments invites the jury to consider the penal consequences of a conviction on a defendant and, therefore, is wholly improper.

Accordingly, the defendant should be precluded from in any way mentioning potential penalties.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/ Reginald L. Harris*
REGINALD L. HARRIS, #48939MO
JENNIFER A. WINFIELD, #53350MO
Assistant United States Attorneys
111 S. 10th  Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

*/s/ Reginald L. Harris*
REGINALD L. HARRIS, #48939MO
Assistant United States Attorney