UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:19-CR-00116-CDP |
| vs. ) | |
| ) | |
| **KENNETH A. GROOMS, II**, ) | |
| ) | |
| Defendant. ) | |

### SENTENCING MEMORANDUM
### OF DEFENDANT KENNETH A. GROOMS, II

Introduction

There was a moment during Kenneth Grooms' Presentence Investigation Report interview where the impact of this case came into focus. Kenneth was asked whether he had a "dream job." Without hesitating for a moment, he replied "I was doing it."

There is no question that the most important word in Kenneth's response is "was." Kenneth *was* a police officer at the St. Louis Metropolitan Police Department. Kenneth *was* supporting his family and working toward earning a pension that might someday allow him to retire. Kenneth *was* helping the community in the way that he had dreamed of doing since he was a young man.

Today, Kenneth is not doing any of those things. As he awaits his sentence, Kenneth has already been harshly punished. He is no longer and will never again be a police officer. As a sole provider for his family, he was out of work for almost three months. Kenneth has had to scramble to keep his family afloat after the loss of his career and damage to his reputation.

Kenneth's predicament is the result of being involuntarily thrust into an impossible situation. When he received the call from his pregnant fiancée (now wife) that she had been

1

threatened while with his daughters in an area of town that he knew from a lifetime of experience to be unsafe, Kenneth's options were few and far between.  No man that cared at all about his family would have directed made them call the police department through the main line.  Some might have called for backup, but, as Kenneth testified at trial, he needed to get up there fast, did not know what the situation was, and was not sure that he would find a situation requiring multiple officers.  Further, had Kenneth called for backup, Kenneth may have been accused of unnecessarily diverting Department resources to address a matter that could be regarded as personal in nature.

When Kenneth arrived at the scene, he very quickly found himself in a situation that he could not control, with a heated and ongoing dispute threatening to cause a public disturbance.  So, he did what his training (as confirmed by Sergeant Eric Bartlett) told him to do.  He attempted to de-escalate the situation by getting the people involved out of one another's sight.  Kenneth's years of training also taught him not to let a potential suspect into his car (much less one that had reportedly been making threats) without cuffing him.  As Kenneth testified at trial, cuffing Kimberly woods made little sense, since he knew that she posed him no threat, and removing her from the scene would have left several minor children unsupervised and alone in a dangerous neighborhood.  In handcuffing Mr. Cotton and removing him from the scene, Ken decided to follow his training in a way that seemed reasonable to him.  Unfortunately, the jury disagreed.

Factors for Consideration Under 18 USC § 3553

18 USC § 3553 provides the factors to be considered in imposing a sentence.  Among them are "the nature and circumstances of the offense and the history and characteristics of the defendant."  *See* 18 USC § 3553(a)(1).  As to the offense, the videos presented by the

Government showed that the detention of Mr. Cotton lasted only approximately six minutes.  It is difficult to imagine that many detentions conducted by police officers anywhere in the United States are shorter than that.  Although Mr. Cotton now claims that he was put in fear of his life and that he has been traumatized by what his version of what happened in the alley, the Government's video shows him walking calmly back to John's Restaurant and retrieving his lunch.  These are hardly the actions of a man that was terrorized and put in fear of death mere moments ago.

Regarding Kenneth's history, the Presentence Investigation Report ("PSR") shows no prior crimes and a solid record of employment.  Indeed, this is cited as a potential factor warranting a downward variance.  *See* PSR ¶ 73.  The PSR also notes that Kenneth was reprimanded in August 2013 for "*failing to arrest* an individual who had active warrants for violation of an ex parte order."  *See* PSR ¶ 50.  What is not noted in the PSR, however, is that Kenneth opted not to arrest this individual because she was approximately seven month pregnant at the time.  Whatever the reason, however, the point is that Kenneth was being reprimanded for *not* making an arrest that "should" have been made, rather for making unnecessary arrests and/or detentions.  This crucial, in that it confirms that the incident that put Kenneth in front of this Court was a proverbial "blip on the radar" rather than business as usual.  Also relevant to Kenneth's history, the PSR also notes strong family ties and responsibilities.  This is supported by the Sentencing Letters attached to this Memorandum.

Next, 18 USC § 3553 directs the Court to consider the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  *See* 18 USC § 3553(a)(2)(A).  In the interest of brevity, Defendant directs the Court to the first paragraph under this subheading for discussion of the seriousness of

3

the offense.  As far as the latter two points from this passage, one must consider that Mr. Cotton lost six *minutes* of his life and Kenneth has lost a career that he spent six *years* trying to get into, and another *ten years* pursuing.  If suffering that severe of a punishment for an offense this mild does not promote respect for the law and provide an adequate deterrence, it is difficult to imagine what would.

As to the next factor under 18 USC § 3553, there is no need to protect the public from further crimes by Kenneth.  *See* 18 USC § 3553(a)(2)(C).  At 39 years old, Kenneth's only crime arose out of his employment as a police officer.  Since he is no longer, and will never again be an officer, there is, simply put, no risk that Kenneth will reoffend in this regard.

Another relevant factor under 18 USC § 3553 is the goal of providing a defendant with "needed educational or vocational training."  *See* 18 USC § 3553(a)(2)(D).  The only barrier to employment identified in the PSR is Kenneth's inability to serve as a police officer.  Following a functionally forced resignation from the St. Louis Metropolitan Police Department, Kenneth spent the next two and a half months actively seeking employment.  He stands before this Court as a once-again gainfully employed man, with a job as a delivery driver for Federal Express.  Kenneth's work ethic can responsibilities to his family keep him motivated to find and maintain steady employment, and he has proven successful in this regard.  If Kenneth needs further educational or vocational training, there is every reason to believe that he will pursue this on his own.

Conclusion

None of the factors under 18 USC § 3553 weigh in favor of locking Kenneth up.  Kenneth's life has already been irreparably damaged.  It will never be the same as it was before this case was brought against him.  Kenneth has lost his career, his financial security, his dream

4

of serving his community as a police officer, and his reputation.  Society swill gain nothing by locking up Kenneth and derailing the progress that he has made toward putting his life back together.  The attached sentencing letters show that Kenneth served his community with sympathy and compassion.  I humbly request that the Court return the favor in considering his sentence.  The most rational, appropriate, and just sentence in this case is a term of probation of two years, with such conditions as are deemed appropriate by the Court.

>Respectfully submitted,
>
>*s/ Luke A. Baumstark*
>LUKE A. BAUMSTARK #56344
>The Baumstark Firm, LLC
>815 Geyer Avenue
>St. Louis, MO  63104
>(314) 492-6290
>(314) 492-6348 FAX
>luke@baumstarkfirm.com
>
>***Attorney for Defendant***
>***Kenneth A. Grooms, II.***

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 26th day of September, 2019, this document was filed with the court via the CM/ECF system which will send notice to all parties of record.

>*/s/ Luke Baumstark*